## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLENN CARPENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-752-SRF |
| | ) |
| LIBERTY MUTUAL INSURANCE | ) |
| COMPANY and LM GENERAL | ) |
| INSURANCE COMPANY | ) |
| | ) |
| Defendants. | ) |

Bayard Marin, Daulton Gregory, MARIN & GREGORY, LLC, Wilmington, DE.

    Attorneys for Plaintiff.

Karine Sarkisian, KENNEDYS CMK LLP, Wilmington, DE.

    Attorney for Defendants.

## **MEMORANDUM OPINION**

March 1, 2024
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE:**

The present case involves an insurance coverage dispute concerning whether the policy limits for underinsured motorist ("UIM") coverage benefits may be stacked under two motor vehicle insurance policies the Defendants, Liberty Mutual Insurance Company and LM General Insurance Company (collectively "Liberty" or "Defendants"), issued to Plaintiff, Glenn Carpenter, (hereinafter "Plaintiff").

Presently before the court is Plaintiff's Motion to Remand the case to the Delaware Superior Court (D.I. 3)[1] pursuant to 28 U.S.C. § 1447(c) and Defendants' Motion to Dismiss the Amended Complaint (D.I. 1 Ex. C) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (D.I. 5).[2] For the reasons that follow, Plaintiff's Motion to Remand is **GRANTED** and Defendants' Motion to Dismiss is **DENIED AS MOOT**.

## I.   BACKGROUND

This action arises from injuries sustained by Plaintiff in a motor vehicle accident in Dover, Delaware on October 31, 2021. (Amended Complaint at ¶¶ 9–14) Plaintiff recovered the statutory minimum liability limit of $25,000.00 from the tortfeasor's policy but claims it did not fully compensate him for his injuries. (*See id.* at ¶ 14) Therefore, Plaintiff presented a claim for UIM benefits to his own insurer, Liberty. (*E.g. id.* at ¶ 20)

He was told by Liberty's claims adjuster that he could "stack" the UIM coverage limits of $100,000.00 under both of his policies to recover up to $200,000.00 for his injuries.[3] (*Id.* at ¶¶ 35–37) Based on this representation, Plaintiff believed he could stack his coverage, therefore,

---

[1] The briefing submitted for this motion can be found at D.I. 3 and D.I. 11.
[2] The briefing submitted for this motion can be found at D.I. 7, D.I. 12, and D.I. 14.
[3] It is undisputed that Plaintiff was insured by Liberty under two policies, one for an automobile and one for a motorcycle, each with a $100,000.00 per person UIM limit. (Amended Complaint at ¶ 35)

he settled with the tortfeasor for the policy limits of liability coverage. (*Id.* at ¶ 43–45) Subsequently, Defendants backtracked and took the position that Plaintiff's policies were not stackable, so only $100,000.00 of UIM coverage was available to compensate Plaintiff for his injuries. (*See id.*) This action followed.

Plaintiff originally brought suit in the Court of Chancery for the State of Delaware (hereinafter "Chancery Court Action") on July 19, 2022. (D.I. 1 Ex. A at 5–18); *see also Carpenter v. Liberty Mut. Ins. Co.*, C.A. No. 2022-0628. The complaint included a claim for equitable relief based on equitable fraud in Count III.[4] To state a prima facie case for equitable fraud, Plaintiff must satisfy the elements of common law fraud except that "there is no requirement that the defendant have known or believed its statement to be false or to have made the statement in reckless disregard of the truth." *Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. 1996) (quotations omitted).[5] Thus, where there is a special relationship between the parties, such as where the defendant owes a fiduciary duty to the plaintiff, "equity provides a remedy for negligent or innocent misrepresentations." *Id.*; *see also In re Wayport, Inc. Litig.*, 76 A.3d 296, 327 (Del. Ch. 2013).

Defendants moved to dismiss the original complaint for lack of subject matter jurisdiction, and the motion was granted on May 15, 2023. (Amended Complaint Ex. 1; D.I. 1 at

---

[4] The complaint in the Court of Chancery included four other causes of action: an underinsured motorist claim and breach of contract ("Counts I and II"), for which punitive damages were demanded; promissory estoppel ("Count IV"); and waiver and laches ("Count V").
[5] "'To establish a claim for [common law] fraud, a plaintiff must prove (i) a false representation, (ii) a defendant's knowledge or belief of its falsity or his reckless indifference to its truth, (iii) a defendant's intention to induce action, (iv) reasonable reliance, and (v) causally related damages.' Equitable fraud, by contrast does not require proof of factor (ii): It can be conceived of 'as a form of fraud having all of the elements of common law fraud except the requirement of *scienter*.'" *Carpenter v. Liberty Mut. Ins. Co.*, 2023 WL 3454692, at *2 (Del. Ch. May 15, 2023) (quoting *In re Wayport, Inc. Litig.*, 76 A.3d 296, 323, 327 (Del. Ch. 2013)) (alternations in original) (footnotes omitted).

51–58; *see also Carpenter v. Liberty Mut. Ins. Co.*, 2023 WL 3454692 (Del. Ch. May 15, 2023)) The Court of Chancery ruled that a contractual, rather than equitable, relationship existed between Plaintiff and Defendants. *Carpenter*, 2023 WL 3454692, at *2. Thus, under settled Delaware law, no special relationship existed between Plaintiff and his insurer which would support a claim of equitable fraud. *Id.* Because the Court of Chancery's subject matter jurisdiction is limited to equitable claims, the court dismissed the complaint with leave to transfer the case to the Delaware Superior Court. *Id.* at *3.[6]

Plaintiff transferred his complaint with four remaining claims to the Superior Court on June 9, 2023. (D.I. 1 Ex. B) Plaintiff amended his Complaint on June 29, 2023. (*E.g.* D.I. 1 at ¶ 5) The Amended Complaint includes five Counts: an underinsured motorist claim ("Count I"); negligence because the broker failed to act with reasonable care when he informed Plaintiff that he could stack his policies ("Count II"); breach of contract for failure to stack the limits of UIM coverage under both policies ("Count III"); promissory estoppel based on Plaintiff's detrimental reliance on the claim adjuster's representations ("Count IV"); and waiver and latches ("Count V"). (D.I. 1 Ex. C) On July 11, 2023, Defendants removed the case to the District of Delaware based on diversity of citizenship. (D.I. 1) On July 17, 2023, Plaintiff filed a motion to remand this case back to the Delaware Superior Court (D.I. 3), and Defendants filed their Motion to Dismiss on the same date (D.I. 5). Both motions were fully briefed as of August 23, 2023, and are ripe for review. (D.I. 14) The motions were referred to the undersigned Magistrate Judge on January 24, 2024, by District Judge Jennifer Hall. (D.I. 18) On February 5, 2024, the parties

---

[6] The Court of Chancery found: "[e]quitable fraud does not lie here because the relationship is contractual. Specific performance is not necessary to compel payment of money owed under a contract where money damages are available. I find that the Plaintiff has failed to invoke equitable jurisdiction." *Carpenter*, 2023 WL 3454692, at *3.

4

jointly consented to the Magistrate Judge's jurisdiction pursuant to Federal Rule of Civil Procedure 73. (D.I. 20) Oral argument was held on February 29, 2024. (D.I. 19)

## II.   PLAINTIFF'S MOTION TO REMAND

### A. Legal Standard

A party may remove a case from state court to federal court under 28 U.S.C. § 1441 if the matter is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a). If jurisdiction is based on diversity of citizenship, complete diversity must exist and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332(a).

Section 1446(b) dictates the timeliness of removal, providing that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If the basis for removal is not set forth in the initial pleading, however, a defendant must remove within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Thus, an action must be removed within thirty days of receipt of the initial pleading when grounds for removal arise in the initial pleading. However, if the initial pleading does not give rise to grounds for removal, then the thirty days begins to run after receipt of a subsequent document setting forth grounds that warrant removal. *See Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759 (5th Cir. 2000) ("[T]he purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit."). The defendant bears the burden of showing the

5

timeliness of removal under § 1446(b). *Mims v. 84 Lumber Co.*, 2013 WL 4775306, at *2 (D. Del. Sept. 6, 2013) (citing *Scearce v. 3M Co.*, 2013 WL 2156060, at *3 (D.N.J. May 16, 2013)).

## B. Timeliness of Removal

Plaintiff moves to remand the case to the Superior Court on the basis that Defendants' removal was untimely. (D.I. 3 at ¶ 11 (citing 28 U.S.C. § 1446(b)(1))) Plaintiff argues that the original complaint filed in the Court of Chancery stated a claim within the subject matter jurisdiction of the district court sitting in diversity. (*Id.* at ¶ 11–12) Therefore, removal would have been timely within thirty (30) days of service of the original complaint on the Defendants on August 23, 2022. *See* § 1446(b)(1). Defendants' attempt to remove the case following its transfer to the Superior Court and after amendment of the pleading was, therefore, untimely. (*See* D.I. 3 at ¶ 11)

Defendants deny that the original complaint filed in the Court of Chancery contained an ascertainable basis for removal within the subject matter jurisdiction of the district court sitting in diversity. (D.I. 11 at ¶ 10) They contend that this court lacks subject matter jurisdiction over an equitable fraud claim, which falls within the exclusive equity jurisdiction of the Court of Chancery. (*Id.*) Defendants further argue that the amount in controversy is not ascertainable from the original complaint, which includes claims for equitable relief and punitive damages. (*See id.* at ¶ 18) For the district court to exercise diversity jurisdiction, the original complaint must state a claim for damages in excess of $75,000.00. 28 U.S.C. § 1332(a).

In support of his argument that his original complaint could have been removed from the Court of Chancery, Plaintiff cites several cases where claims for equitable fraud have been brought in this court. (D.I. 3 at ¶ 13 (citing *RBAHTDSR, LLC v. Project 64 LLC*, 2020 WL 1270890 (D. Del. Mar. 17, 2020), *report and recommendation adopted in part*, 2020 WL

6

2748027 (D. Del. May 27, 2020) (equitable fraud claim dismissed for lack of special relationship); *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061 (D. Del. 2013) (equitable fraud claim dismissed because leave to amend to add facts regarding a fiduciary relationship was denied); *Rogers v. Wilmington Tr. Co.*, 2021 WL 739048 (D. Del. Feb. 25, 2021) (equitable fraud claim dismissed following a bench trial on the merits due to lack of evidence of a false statement); *Cavi v. Evolving Sys. NC, Inc.*, 2018 WL 2372673 (D. Del. May 24, 2018) (equitable fraud claim failed to meet the heightened pleading standard of Rule 9(b))))

Defendants assert a specious argument that the cases relied upon by Plaintiff are inapplicable because they do not address the district court's subject matter jurisdiction. (D.I. 11 at ¶ 13) Defendants fail to appreciate that the jurisdiction of the district court to adjudicate the equitable fraud claims in those cases was not subject to challenge. The court could not have resolved the various motions related to the equitable fraud counts in each of those cases if it lacked the jurisdiction to do so. The court would certainly have been aware of the limits, if any, of its own jurisdiction because challenges to the court's subject matter jurisdiction may be raised at any time, including *sua sponte* by the court. FED. R. CIV. P. 12(h)(3).

Throughout their argument that grounds for removal were not ascertainable in the original complaint, Defendants fail to acknowledge that "[i]n exercising their jurisdiction on the ground of diversity of citizenship, the federal courts, in the long course of their history, have not differentiated in their regard for State law between actions at law and suits in equity." *Guaranty Tr. Co. v. York*, 326 U.S. 99, 103 (1945).

The Court of Chancery has recognized that matters of Delaware law arising under its exclusive jurisdiction may also be litigated in a federal court sitting in diversity. *See IMO Daniel Kloiber Dynasty Tr.*, 98 A.3d 924, 939 (Del. Ch. 2014). In *Kloiber*, the Court of Chancery

7

addressed whether the Kentucky Family Court had the ability to restrict the actions of a Special Trustee of a Delaware Dynasty Trust to prevent the dissipation of martial assets at issue in a divorce proceeding in that court. *Id.* at 927–29. The Trustee argued that the Kentucky Family Court did not have the ability to restrict the Trustee's actions because the Delaware Qualified Dispositions in Trust Act, 12 *Del. C.* §§ 3570–3576, states that "[t]he Court of Chancery shall have exclusive jurisdiction over any action brought with respect to a qualified disposition." *Id.* at 938 (quoting § 3572(a)). The Court of Chancery rejected the argument that it was the only forum, to the exclusion of other state and federal courts, for adjudicating matters falling under its exclusive jurisdiction and reasoned as follows:

> When a Delaware state statute assigns exclusive jurisdiction to a particular Delaware court, the statute is allocating jurisdiction among the Delaware courts. The state is *not* making a claim against the world that no court outside of Delaware can exercise jurisdiction over that type of case.
>
> Nor, as a matter of power within our federal republic, could the State of Delaware arrogate that authority to itself. Assume that a non-Delaware citizen who served as an officer of a Delaware corporation was successful on the merits in defending a proceeding covered by Section 145(c) of the General Corporation Law. Assume that the non-Delawarean sued the Delaware corporation in federal district court and sought to be indemnified for $1 million. Any challenge to the federal court's jurisdiction based on Section 145(k) conferring exclusive jurisdiction on the Court of Chancery would fail, defeated by the federal diversity statute, 28 U.S.C. § 1331, and the Supremacy Clause of the United States Constitution.

*Id.* at 939 (emphasis in original).

Based upon the discussion of the *Kloiber* decision at oral argument, Defendants concede that this court is not precluded from adjudicating claims of equitable fraud. Therefore, the court finds that the Defendants have not met their burden of showing that the original complaint alleging an equitable fraud claim could not have been removed to this court subject to the satisfaction of the amount in controversy requirement for diversity jurisdiction.

8

### C. Amount in Controversy

Plaintiff contends that the original complaint filed in the Court of Chancery stated a claim that he relied on Defendants' representation that he could stack the UIM policy limits of $100,000.00 under two separate policies and recover up to $200,000.00 in UIM benefits beyond the minimum liability limits of $25,000.00 recovered from the tortfeasor. (*See* D.I. 3 at ¶¶ 11–12) The pleading alleges the Defendants later retracted their position on stacking and offered him the UIM coverage limit of $100,000.00 in settlement. (D.I. 1 Ex. A at ¶ 26) In summary, Plaintiff contended at oral argument that, on these facts, the original complaint provided sufficient notice to Defendants that the amount in controversy exceeded $75,000.00. (*See also* D.I. 3 at ¶ 12)

Defendants dispute that the amount in controversy was apparent from the original complaint because the damages demanded by the Plaintiff included equitable relief and punitive damages. (*See* D.I. 11 at ¶ 18) Defendants fail to point to any Third Circuit authority for their position and instead rely upon cases from outside jurisdictions that do not involve insurance coverage disputes. *Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664 (S.D. Ohio 2003) (regarding a stockholder's demand for examination of corporate books and records); *Whittemore v. Farrington*, 234 F.2d 221 (9th Cir. 1956) (regarding the appointment of a trustee). Contrary to Defendants' argument, in a recent case more closely aligned with the issues pending in this court, the Ninth Circuit held, "it is long-established that in declaratory judgment actions about whether an insurance policy is in effect or has been terminated, the policy's face amount is the measure of the amount in controversy." *Elhouty v. Lincoln Benefit Life Co.*, 886 F.3d 752, 756 (9th Cir. 2018).

9

Moreover, Defendants' arguments are contrary to settled law in the Third Circuit that the amount in controversy is determined by the insurance coverage limits of the policy in dispute. In *State Farm Mutual Automobile Insurance Co. v. Powell*, 87 F.3d 93 (3d Cir. 1996), the insurer sought a declaratory judgment from the court that its insured could not stack coverage under three separate policies, each with UIM limits of $50,000.00. *E.g. id.* at 96. It turned out that one policy was not available because it was purchased after the insured's accident and the UIM limits of another policy had already been tendered to the insured by the time State Farm filed suit. *Id.* Therefore, the only question before the court was whether the remaining UIM policy limit of $50,000.00 could be stacked. *Id.* at 96–97. At the time the case was decided, the diversity jurisdiction statute required that the amount in controversy exceed $50,000.00. *Id.* at 96. The Third Circuit ruled that "[s]imple arithmetic demonstrates that at the time the action was filed, then, only $50,000.00 was in controversy." *Id.* at 97. The court remanded the case to the district court to dismiss it for lack of subject matter jurisdiction. *Id.* at 99.

The *Powell* decision controls the outcome of the case at bar. Setting aside whether both UIM policies may be stacked, there is at least one policy with UIM Coverage limits of $100,000.00 in dispute. (*E.g.* Amended Complaint at ¶ 54) So, "simple arithmetic demonstrates" that, at the time the original complaint was filed in the Court of Chancery, Plaintiff's demand for payment of UIM coverage limits satisfied the amount in controversy for purposes of diversity jurisdiction. *Powell*, 87 F.3d at 97.

Therefore, pursuant to § 1446(b), the Defendants had thirty (30) days from August 23, 2022, the date they were served with the original complaint, to remove the case to district court. Consequently, their removal from the Superior Court to this court on July 11, 2023, was untimely, requiring the court to remand the case back to the Delaware Superior Court.

### D. Award of Fees

As a final matter, Plaintiff requests costs and actual expenses, including attorney's fees, from Defendants pursuant to 28 U.S.C. § 1447(c). (D.I. 3 at ¶ 14) "[A]n award of fees [pursuant to § 1447(c)] is appropriate only when the removing party lacked an objectively reasonable basis for seeking removal." *Branson v. Mestre*, 2017 WL 2615749, at *6 (D. Del. June 16, 2017) (quotations omitted). Plaintiff has not provided any factual support demonstrating that Defendants lacked an objectively reasonable basis for seeking removal. Therefore, the court **DENIES** Plaintiff's request for attorney's fees and costs.

### III. DEFENDANTS' MOTION TO DISMISS

Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (D.I. 5) Based upon the court's decision remanding the case to the Delaware Superior Court, *see* discussion *supra* at §§ II.B. & II.C., Defendants' motion is **DENIED AS MOOT**.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand this case to the Delaware Superior Court (D.I. 3) is **GRANTED** and Defendants' Motion to Dismiss (D.I. 5) is **DENIED AS MOOT**. An Order consistent with this Memorandum Opinion shall issue.